**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| WALTER PARSONS, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-10-4302 |
| § | |
| CITY OF HOUSTON, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

This is a suit under 42 U.S.C. § 1983 brought by Walter and Beverly Parsons, the parents of Jeremy Parsons ("Parsons"). The suit is based on Parsons's death in the City of Houston jail the night he was arrested for public intoxication. The plaintiffs have sued Houston police officer M.L. Peel, who arrested Parsons, and jail employee Sam Babalola, who gave Parsons medication when he complained of pain later that night at the jail. The second amended complaint alleges that Peel arrested Parsons without probable cause and that Babalola was deliberately indifferent to Parsons's medical needs. The plaintiffs have also sued the doctor who examined Parsons, who is identified only as Dr. Simpson, and his employer, the Baylor College of Medicine. Peel and Babalola have filed a motion to dismiss the second amended complaint, arguing that they are entitled to qualified immunity because the facts alleged in the complaint do not, as a matter of law, state constitutional violations. The plaintiffs have not responded to the motion.

Based on the pleadings; the motion; and the relevant law, this court dismisses the claim against Babalola, with prejudice, but denies the motion to dismiss the claim against Peel. The reasons for these rulings are explained below.

**I.      Background**

### A.     The Allegations in the Complaint[1]

The plaintiffs allege that on November 2, 2008, at 7:57 p.m., Houston police officer Peel "was dispatched to a citizen holding suspect call." (Second Am. Compl. ¶¶ 9, 11). When Peel arrived at the scene, Parsons was passed out in the front passenger seat of a van. (*Id.* ¶ 10). The driver of the van was Misty Collins. (*Id.*). Another officer, J. Roberts, investigated Collins for driving while intoxicated.[2] (*Id.* ¶ 11). According to Peel's police report, Parsons was "alert and paying attention" to Roberts's interactions with Collins, but Peel "saw Parsons nod off" "at some point." (*Id.* ¶ 12). Roberts placed Collins under arrest for driving while intoxicated. At that point, "Parsons requested to leave the scene with Collins's sister, who had arrived . . . to check the welfare of her sister." (*Id.* ¶ 13). Peel denied Parsons's request and instead arrested him for public intoxication. (*Id.* ¶ 14). During their exchange, Roberts asked Parsons "whether he was on anything." Parsons "admitted to consuming 60 mg of methadone." (*Id.* ¶ 15). The complaint does not specify whether Parsons made this admission before or after his arrest.

Parsons was taken to the City of Houston jail. The medical screener told Roberts that Parsons could not be admitted to the jail without a medical assessment because he had taken drugs. (*Id.* ¶ 17). Roberts took Parsons to the emergency room at the Ben Taub General Hospital. (*Id.* ¶ 18). Parsons informed the hospital personnel that he had consumed 60 mg of methadone. The personnel took Parsons's vital signs and medically cleared him at 11:15 p.m., four minutes after his arrival. (*Id.* ¶¶ 19, 21). Roberts transported Parsons back to the jail, where Parsons was admitted. (*Id.* ¶ 22).

---

[1]   Because the defendants have moved to dismiss the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6), this court accepts as true the complaint's factual allegations. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2079 (2011).

[2]   It is unclear who and why stopped the van and how Roberts arrived at the scene.

At 11:48 p.m., Babalola, "a Jail Medical Specialist," was called to the jail's clinic to evaluate Parsons. (*Id.*). It is unclear whether Parsons's medical evaluation was part of the jail's intake processing or whether Parsons asked to go to the clinic. Babalola asked Parsons about his medical history. (*Id.* ¶ 23). In response to Babalola's questions, Parsons said that he had fractured his right thigh in a motorcycle accident, that he had had surgery, and that he had been prescribed Lorcet, Soma, and Xanax for pain. (*Id.* ¶¶ 23, 24). Parsons stated that he had taken the prescribed medication earlier that evening and that "he was suffering in pain." (*Id.* ¶ 24). Parsons asked Babalola for a dose of the medicines he had been prescribed. (*Id.* ¶ 25). Babalola explained that the jail did not have Lorcet, Soma, or Xanax, but offered Parsons 800 mg of Motrin, 1000 mg of Robaxin, juice, and a sandwich. (*Id.*). Parsons took the medication and was escorted back to his cell. (*Id.* ¶ 26).

At 5:50 a.m., Parsons was found dead in his bed. (*Id.* ¶ 27). The medical examiner determined that the cause of death was the "toxic effects of methadone, alprazolam and diazepam (pulmonary and cerebral edema)." (*Id.* ¶ 28).

The complaint alleges two causes of action under § 1983: a Fourth Amendment unlawful arrest claim against Peel and a Fourteenth Amendment deliberate indifference claim against Babalola. The plaintiffs allege that although Parsons was admittedly under the influence of drugs when Peel arrested him, there was no probable cause for arrest for public intoxication because Parsons was not in a public place and because Collins's sister was willing "to transport him to the safety of his home." (*Id.* ¶ 30). The plaintiffs also allege that Dr. Simpson and the medical personnel at Ben Taub General Hospital were deliberately indifferent to Parsons's medical condition because they evaluated him in four minutes, failed to admit him to the hospital for observation, and did not provide treatment. (*Id.* ¶¶ 32, 35, 38). According to the plaintiffs, "Babalola continued the

3

deliberate indifference" by failing to conduct any medical tests and by giving Parsons additional drugs. (*Id.* ¶ 33). The plaintiffs seek damages for Parsons's death: $1.5 million for the loss of companionship and society of their son; $1.5 million for the mental anguish and emotional pain they have suffered because of their son's death; $500,000 for the pain and suffering Parsons experienced before his death; and $10,000 for Parsons's medical bills and funeral expenses. (*Id.* ¶¶ 40–42). The plaintiffs also "sue for all matters in equity and in law to which [they are] entitled" and "for damages in the past, present and future." (*Id.* ¶¶ 45, 46).

### B. The Motion to Dismiss

In May 2011, Peel and Babalola filed a motion to dismiss the second amended complaint under Rule 12(b)(1) and 12(b)(6).[3] (Docket Entry No. 21). Both defendants argue that the court lacks subject matter jurisdiction because the plaintiffs have not alleged sufficient facts to establish standing to sue under the Texas survival statute, § 71.021 of the Texas Civil Practice and Remedies Code. The defendants also argue that they are entitled to qualified immunity because the complaint fails to state constitutional violations against them.[4] Peel argues that the § 1983 claim against him should also be dismissed because there is no causal connection between the alleged constitutional

---

[3] The defendants have filed two prior motions to dismiss raising the same or similar arguments. The first motion to dismiss, (Docket Entry No. 4), challenged the plaintiffs' original complaint. The plaintiffs filed a response and a motion for leave to file a first amended complaint. This court granted the motion for leave to amend and denied as moot the motion to dismiss the original complaint. The second motion to dismiss, (Docket Entry No. 17), challenged the first amended complaint. The plaintiffs responded by filing a second amended complaint. Because the motion to dismiss the first amended complaint raises the same arguments raised in the motion to dismiss the second amended complaint, it is denied as moot.

[4] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). The defendants argue only that the plaintiffs have failed to plead facts showing a constitutional violation; they do not argue that the constitutional rights allegedly violated were not clearly established at the time of the challenged conduct.

4

violation—the illegal arrest—and the damages for Parsons's death the plaintiffs seek. The plaintiffs have not filed a response.[5]

## II. The Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). "[T]he standard of Rule 12(b)(1) . . . while similar to the standard of Rule 12(b)(6), permits the court to consider a broader range of materials in resolving the motion." *Williams v. Wynne*, 533 F.3d 360, 365 n.2 (5th Cir. 2008). A court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). If, however, the defendant challenges the court's subject matter jurisdiction based only on the allegations in the complaint, the court's review is limited to the complaint alone. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (distinguishing between a facial attack and a factual attack on subject matter jurisdiction). If the allegations, which the court must accept as true, are sufficient to allege jurisdiction, "the complaint stands." *Id.*; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir.

---

[5] "Even if a plaintiff fails to file a response to a motion to dismiss despite a local rule's mandate that a failure to respond is a representation of nonopposition, the Fifth Circuit has rejected the automatic granting of dispositive motions without responses without the court's considering the substance of the motion." *Hill v. Jacobs Eng'g Grp., Inc.*, No. H–10–1506, 2011 WL 2565331, at *3 (S.D. Tex. June 27, 2011). "The mere failure to respond to a motion [to dismiss] is not sufficient to justify a dismissal with prejudice." *Watson v. United States ex rel. Lerma*, 285 F. App'x 140, 143 (5th Cir. 2008) (citing *Johnson v. Pettiford*, 442 F.3d 917, 919 (5th Cir. 2006)).

2009) ("In a facial attack . . . the court examines whether the complaint has sufficiently alleged subject matter jurisdiction. As it does when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged . . . in the complaint as true.").

### B.     Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b) (6). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63. To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The *Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S.

at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court concluded that "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555); *see also Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "'Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.'" *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (unpublished) (per curiam) (quoting *Twombly*, 550 U.S. at 556 n.3). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

**II.    Analysis**

    **A.    Subject Matter Jurisdiction**

Peel and Babalola argue that the plaintiffs have not alleged sufficient facts to give them standing to sue under the Texas survival statute, depriving the court of subject matter jurisdiction. (Docket Entry No. 21, at 13). "Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in [the] administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival

statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (internal citation omitted). Under the Texas survival statute, "[a] cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury." TEX. CIV. PRAC. & REM. CODE ANN. § 71.021(a) (West 2008). "A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." *Id.* § 71.021(b). Under these provisions, "the decedent's estate has a justiciable interest in the controversy sufficient to confer standing" in a survival action. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005).

In the introductory paragraph of their complaint, the plaintiffs alleged that they are the legal representatives of Parsons's estate. (Docket Entry No. 20, at 1). This allegation is a sufficient basis to provide the plaintiffs standing against the defendants' facial attack. *See Paterson*, 644 F.2d at 523 (stating that in a facial attack to subject matter jurisdiction, the court's review "is limited to whether the complaint is sufficient to allege the jurisdiction"); *see also Lovato*, 171 S.W.3d at 850 ("Because a decedent's survival claim becomes part of her estate at death, it follows that the estate retains a justiciable interest in the survival action."). The defendants acknowledge that the plaintiffs "purport to bring claims on behalf of the estate of Jeremy Parsons." The defendants argue that the complaint "contains no allegations to support that either of them is the personal representative of Parsons's estate." (Docket Entry No. 21, at 13). This argument does not take into account the allegation of a right to assert claims on behalf of Parsons's estate, which is an allegation that the plaintiffs are the estate's legal representatives. The defendants' Rule 12(b)(1) motion to dismiss is denied.

**B.     The Illegal Arrest Claim against Peel**

To prevail on their Fourth Amendment illegal arrest claim, the plaintiffs must sufficiently allege that Peel arrested Parsons without probable cause. *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004)). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000)).

Under Texas law, public intoxication requires that a "person appears in a public place while intoxicated to the degree that the person may endanger the person or another." TEX. PEN. CODE ANN. § 49.02(a) (West 2011). The plaintiffs have alleged that Parsons was arrested without probable cause because he was not in a public place at the time of his arrest (he was a passenger inside an automobile) and because he posed no danger to himself or others (Collins's sister was willing to drive him home). (Second Am. Compl. ¶ 30). Peel argues that Texas law allows an officer to arrest a car passenger for public intoxication and that Parsons posed a danger to himself or others because he had ingested drugs. (Docket Entry No. 21, at 8–9).

The plaintiffs have not sufficiently alleged that the arrest lacked probable cause because Parsons was not in a "public place." Texas law defines a "public place" as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX. PEN. CODE ANN. § 1.07(a)(40). The Texas Court of Appeals has held that the interior of a car on a street or parked in a public place is a public place "should it be viewed from the outside by diligent police officers." *Pete v. State*, No. 01-09-00114-CR, 2009 WL 3152196, at *3 (Tex. App.—Houston, [1st Dist.] Oct. 1, 2009, no pet.) (unpublished). The plaintiffs

10

have alleged that Parsons was a passenger inside Collins's van and have not alleged it was somewhere other than in a public place.

The argument for dismissal, however, is unpersuasive. The plaintiffs have sufficiently alleged that Peel lacked probable cause to arrest Parsons because he posed no danger to himself or another. "A warrantless arrest for public intoxication requires that the suspect be not merely intoxicated but intoxicated to such an extent that he may endanger himself or another." *Simpson v. State*, 886 S.W.2d 449, 454 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (internal quotation marks omitted). "[P]hysical manifestations of alcoholic consumption alone are not sufficient to constitute public intoxication," *id.* at 455, and do not give rise to probable cause to arrest. *See Davis v. State*, 576 S.W.2d 378, 380 n.2 (Tex. Crim. App. 1978) (holding that there was no indication that the defendant posed a danger to himself or another, and no probable cause for a public intoxication arrest, because the defendant was walking on a sidewalk "without any difficulty" and the arresting officer observed that the defendant was intoxicated "[o]nly on close inspection"); *Commander v. State*, 748 S.W.2d 270, 272 (Tex. App.—Houston [14th Dist.] 1988, no writ) (holding that there was no probable cause to arrest the defendant for public intoxication where the defendant "was leaning against a vehicle in a private driveway, his eyes were glassy, he smelled of alcohol and he seemed unsteady"; there was "no suggestion that [the defendant] had been driving or intended to drive" or that he was "in any risky or precarious circumstance from which he needed to be protected"). Courts have found probable cause for a public intoxication arrest in circumstances when a reasonable officer could conclude from the facts known to him that the arrestee posed a potential danger to himself or another. *See, e.g., Raley v. Fraser*, 747 F.2d 287, 290 (5th Cir. 1984) (holding that there was probable cause to arrest the appellant for public intoxication when the appellant, who appeared intoxicated, "had gotten out of a car and might reasonably have been expected to drive

11

sometime thereafter"); *Potts v. State*, No. 01-02-00119-CR, 2003 WL 164854, at *2 (Tex. App.—Houston [1st Dist.] Jan. 3, 2003, no pet.) (unpublished) (finding probable cause to conclude that the defendant was a potential danger to himself or another when the defendant admitted to smoking PCP and the arresting officer testified, based on his experience, that persons under the influence of PCP typically exhibit erratic, violent behavior and experience hallucinations); *Simpson*, 886 S.W.2d at 455 (holding that there was probable cause to arrest the appellant, who "was arguing violently in the middle of the street"; the arresting officer could reasonably assume "that moving vehicles in the street might pose a danger to appellant and others, particularly given appellant's state of intoxication").

The plaintiffs alleged that Parsons was a passenger in Collins's van and that Collins's sister was willing to drive him home. There are no allegations that Parsons intended to drive himself; that he intended to walk home on a public street where other vehicles could pose a danger to him given his intoxicated state; that he was violent or belligerent; or that he was prone to erratic behavior because he had taken 60 mg of methadone earlier in the evening. The complaint sufficiently alleged that Peel had no basis to conclude that Parsons posed a potential danger to himself or another and that the arrest for intoxication in a public place therefore lacked probable cause. The motion to dismiss the Fourth Amendment claim against Peel based on qualified immunity is denied based on the factual allegations in the complaint.

Peel next argues that the § 1983 claim against him should be dismissed because there is no causal connection between the alleged constitutional violation—the illegal arrest—and the damages sought by the plaintiffs. "It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property." *Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981).

"To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *see also Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) ("[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury.").

The plaintiffs seek damages for Parsons's death—damages for the loss of Parsons's companionship and society, for the mental anguish experienced by the plaintiffs because of Parsons's death, for the pain and suffering Parsons experienced before his death, and for funeral expenses and medical bills. The alleged illegal arrest was not the proximate cause of Parsons's death. After the arrest, Parsons was taken to the emergency room at Ben Taub General Hospital, where his vital signs were taken and he was medically cleared to be taken to jail. The plaintiffs alleged that Parsons died in his cell because of the toxic effects of methadone, alprazolam, and diazepam. The plaintiffs have not alleged that Peel was responsible for Parsons's consumption of these drugs or that Peel knew of, and ignored, Parsons's need for additional medical treatment. The motion to dismiss is granted to the extent the plaintiffs seek to recover from Peel the damages related to Parsons's death. *Cf. Estate of Soward v. City of Trenton*, 125 F. A'ppx 31, 42 (6th Cir. 2005) (holding that the district court did not err by limiting damages "only to those injuries Sowards suffered as a result of the warrantless entry" and by excluding damages related to his death where the warrantless entry was not the proximate cause of Sowards's death). But the plaintiffs also sued "for all matters in equity and in law to which [they are] entitled" and "for damages in the past, present and future." (Second Am. Compl. ¶¶ 45, 46). The court agrees with Peel that the plaintiffs did not "specifically allege any damages arising directly out of Parsons's allegedly unlawful arrest," (Docket Entry No. 21, at 10), but the general allegations quoted above encompass a claim for

13

damages arising out of the alleged illegal arrest. The motion to dismiss is granted as to the claim for damages relating to Parsons's death, but denied as to the claim for damages Parsons suffered as a result of the alleged unlawful arrest other than those relating to his death.

### C. The Deliberate Indifference Claim against Babalola

"As a pretrial detainee, [Parsons's] constitutional rights flowed from the due process guarantees of the Fourteenth Amendment rather than from the Eighth Amendment's prohibition against cruel and unusual punishment." *Garcia v. Cnty. of El Paso*, 79 F. App'x 667, 669 (5th Cir. 2003) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)). Nevertheless, "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody [are] analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009); *see also Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) ("[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care . . . . When the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights, regardless of whether the individual is a pretrial detainee or state inmate.").

"Prison officials violate the Eighth Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs constituting an unnecessary and wanton infliction of pain." *Brewster v. Dretke*, 587 F.3d 764, 769–70 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official shows

deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Id.* at 838. A claim that prison medical personnel made an incorrect diagnosis does not state a cause of action for deliberate indifference in providing medical care. *Domino*, 239 F.3d at 756 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). A plaintiff must allege and raise a fact issue as to whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238.

The plaintiffs alleged that Babalola was deliberately indifferent to Parsons's medical needs because he did not do medical tests and because he gave Parsons pain medication, juice, and a sandwich the night before his death. These allegations are insufficient to state a constitutional violation. The plaintiffs have not alleged any facts indicating that Babalola knew or had reason to know that Parsons's condition was critical, that medical tests had to be conducted, or that Parsons needed immediate medical attention. To the contrary, the complaint alleged that Parsons was medically cleared by the hospital before he returned to the county jail. Babalola gave Parsons pain medication after Parsons reported that he had surgery on his right thigh, had been prescribed pain medication post-surgery, and was experiencing the pain for which he had been prescribed the medication. Babalola was, at most, negligent by giving Parsons Motrin and Roboxin after Parsons admitted that he took 60 mg of methadone earlier in the evening, but "negligence does not amount to deliberate indifference." *Brewster*, 587 F.3d at 770.

The Fourteenth Amendment claim against Babalola is dismissed with prejudice. The plaintiffs have had two opportunities to amend their complaint—both in response to similar arguments for dismissing the deliberate indifference claim—and further amendment would be futile. *See id.* at 768 (stating that "leave to amend is not required . . . if the plaintiff has already pleaded his 'best case'").

### D. The Deliberate Indifference Claim against the Remaining Defendants

The plaintiffs allege a deliberate indifference claim against the remaining defendants, Dr. Simpson and the Baylor College of Medicine. It appears that these defendants have not been served. "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* By November 4, 2011, the plaintiffs must inform the court whether Dr. Simpson and the Baylor College of Medicine have been served. If the plaintiffs have not served the defendants, the plaintiffs must inform the court whether good cause exists for their failure to do so.

### IV. Conclusion

Peel's and Babalola's motion to dismiss is granted in part and denied in part. The motion is granted as to the Fourteenth Amendment deliberate indifference claim against Babalola and this claim is dismissed with prejudice. The motion is denied as to the Fourth Amendment claim against Peel, but the plaintiffs' damages are limited to recovering for the injuries Parsons suffered as a result of the alleged unlawful arrest. By November 4, 2011, the plaintiffs must inform the court whether

the remaining two defendants have been served and, if they have not, whether good cause exists for the failure to serve.

       SIGNED on October 24, 2011, at Houston, Texas.

                                    _____
                                          Lee H. Rosenthal
                                      United States District Judge